**UNITED STATES of America**

v.

**HOUSEHOLD GOODS MOVERS INVESTIGATION.**

Misc. No. 32–59.

United States District Court
District of Columbia.

June 20, 1960.

☞7(15)

Willard R. Memler, Antitrust Division, U. S. Dept. of Justice, for the Government.

Donald E. Cross, Watkins & Rea, Washington, D. C., for Movant.

LEONARD P. WALSH, District Judge.

On November 24, 1959, the Attorney General of the United States authorized a grand jury investigation of possible antitrust violations that "may have occurred and may still be occurring in connection with the activities and conduct of persons, firms, corporations, associations and their members * * * engaged or having been engaged in the storage, transportation, including drayage and accessorial services, of household goods and personal effects". A Special Grand Jury was impanelled on January 5, 1960, in the United States District Court for the District of Columbia to investigate the possible violations.

On December 9, 1959, a subpoena duces tecum was served upon George J. Cook, Inc., returnable January 8, 1960. The aforementioned George J. Cook, Inc., is engaged in the storage and transportation of household goods and personal effects, and is also, allegedly, an agent for United Van Lines, another carrier of household goods.

A motion to quash the subpoena was filed on December 24, 1959, on the grounds that it violated the movant's rights under the Fourth Amendment in that it (1) was too broad and sweeping in its request, and (2) would be too burdensome and oppressive to comply with.

The Government thereafter substantially modified its demands as noted in the affidavit attached to the Government's memorandum in opposition to the motion. The Government became conciliatory as to the date of return, reduced the period of time covered by the subpoena from approximately eleven years to five years (January 1, 1955–December 9, 1959), and offered to provide the movant substantial clerical assistance in searching his files. It was also noted by the Government that a majority, if not all, of the others subpoenaed, had complied with a similiar subpoenas by February of 1960. Movant rejected the

Government's offer of assistance and the offer to modify the subpoena.

The movant meanwhile claims that it is a small corporation, of few (12) employees, small fixed assets ($11,256 on November 30, 1959), low total gross ($167,960.69 in the eleven months of 1959), that the cost to comply with the subpoena here would be $1,000 to $1,500, and that any records it furnished would be a duplication of those produced by the United Van Lines.

Oral argument was heard on March 25, 1960, and the memoranda and pleadings have been reviewed in some detail.

As noted by the Government in this case, the standards of reasonableness for the breadth and scope of a subpoena duces tecum are substantially as set forth in the case of Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 506, 90 L.Ed. 614:

"Beyond this the requirement of reasonableness, including particularity in 'describing the place to be searched, and the persons or things to be seized,' also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry."

■ Investigations of possible antitrust violations almost invariably involve great amounts of records, etc., either by reason of the size of the corporation, or the industry, or the scope of the inquiry. Also, since antitrust conspiracy cases are usually built on circumstantial evidence, United States v. Morgan, D.C.

S.D.N.Y.1953, 118 F.Supp. 621, and because conspiracies "are seldom capable of proof by direct testimony and may be inferred from the things done and from the circumstances". Baush Machine Tool Co. v. Aluminum Co., 2 Cir., 1934, 72 F.2d 236, 241, certiorari denied 1934, 293 U. S. 589, 55 S.Ct. 104, 79 L.Ed. 683, and, because the activity under investigation may only be meaningful if a pattern of activity over a number of years is studied, the breadth and scope of subpoenas issued in antitrust inquiries are perhaps necessarily greater than in other types of cases. See also Application of Radio Corporation of America, D.C.S.D.N.Y.1952, 13 F.R.D. 167; In re Motions to Quash Subpoenas, D.C.S.D.Cal.1939, 30 F.Supp. 527; and In re Investigation of World Arrangements, D.C.D.C.1952, 13 F.R.D. 280, 284.*

With respect to the claim that compliance with the subpoena is burdensome and oppressive and therefore unreasonable, almost all subpoenas are burdensome to some extent, In re Petition of Borden Co., D.C.N.D.Ill.1948, 75 F.Supp. 857. The courts, in the exercise of their functions, are constantly inconveniencing people; however, personal inconvenience and the suppression of truth must give way to public interest. For, as noted by Judge Hand, McMann v. Securities and Exchange Commission, 2 Cir., 1937, 87 F.2d 377, 284, 109 A.L.R. 1445, the suppression of truth may be involved in any inquiry concerning the public interest, and a subpoena duces tecum should be quashed only where the private interest is supreme.

■ The Court finds that the public interest outweighs the private interest here; and that the subpoena is not so burdensome or oppressive as to be unreasonable, nor is its scope so great as to be unreasonable, especially in view of the Government's own modifications of,

---

* Judge Kirkland speaking in the World Arrangements case stated: "A grand jury investigation should be sufficiently broad to allow a full investigation. * * * There has been an objection voiced that the documents are not relevant or material. At this state of the proceedings the relevancy of documents are tested solely by the purpose of the grand jury in its investigation, namely, 'Possible Violation of Title 15 U.S.C. Sec. 1–23 [Federal Anti-trust Laws].' "

and compromises offered with respect to, the instant subpoena. Also, other parties to the investigation have complied with the subpoenas, and apparently have done so without encountering serious difficulties.

Therefore, the Court, having taken into consideration the nature, purpose, and scope of the inquiry, the extent to which the complaining party is involved in the matters under investigation, and the inconvenience, time and expense which may be incurred by the movant in complying with the subpoena as weighed against the public interest, and the modifications made and offered by the Government, * * * denies the motion to quash or modify the subpoena duces tecum.

Counsel for the Government will prepare an appropriate order for submission to the Court.

Huxman, J., dissented.